IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALL RISKS, LTD.
:
:
:
v.   :   Civil Action No. CCB-10-1554
:
CRUMP INSURANCE SERVICES,   :
INC., et al.
:

...o0o...

## MEMORANDUM

Pending before this court is a motion to dismiss or, in the alternative, to transfer or stay, filed by the defendants, Crump Insurance Services, Inc. ("Crump"), Alejandro Duran, Carl Feldhaus and Jordan Yoss. Duran, Feldhaus and Yoss (the "individual defendants") were employed in Georgia by the plaintiff, All Risks, Ltd. ("All Risks") until April 23, 2010, and began working at Crump on April 26, 2010. In declaratory judgment actions filed in Georgia state court on April 23 and 27, 2010, Crump, Duran, Feldhaus and Yoss sought declarations that non-solicitation covenants the individual defendants had signed while employed by All Risks are unenforceable. Three weeks later, All Risks sued Crump and the individual defendants in Maryland for breach of contract, also alleging tortious interference with contract and prospective advantage. The defendants have moved to stay or dismiss the action, or alternatively to transfer this case to the Northern District of Georgia. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the defendants' motion will be denied.

## FACTUAL BACKGROUND

All Risks and Crump are wholesale insurance brokers with offices nationwide. (Compl. ¶¶3-4.) All Risks is a Maryland corporation with its principal place of business in Hunt Valley,

1

Maryland. (Compl. ¶3.) Crump is a Texas corporation with its principal place of business in Dallas, Texas. (*Id*. ¶4.) Duran, Feldhaus and Yoss are and have been at all relevant times citizens and residents of Georgia. (*Id*. ¶¶5-7.) All three individual defendants were employed by All Risks in its Atlanta, Georgia office beginning at various times ranging from October 2005 to August 2007. (*Id*. ¶¶9-11.) Duran was a Vice President, and Feldhaus and Yoss worked under Duran's supervision. (Affidavit of Alejandro Duran ("Duran Aff."), Defs.' Mem., Ex. 1, at ¶1.)

Upon the commencement of their respective periods of employment, Duran and Yoss each executed a "Brokerage Agreement" ("BA") (*see* Duran BA, Compl. Ex. A; Yoss BA, Compl. Ex. C) and Feldhaus executed a "Non-Solicitation Agreement" ("NSA") (*see* Feldhaus NSA, Compl. Ex. B). (Compl. ¶¶9-11.) Each agreement contains provisions prohibiting the individual defendants from soliciting certain of All Risks' customers following the termination of their employment. Specifically, Duran and Yoss agreed that they would not "solicit . . . or accept the business of" either a "Known Insured" or a "Known Retail Agent or Retail Agency" "for the purpose of providing or otherwise provide Prohibited Services" to any such person or entity for a period of two years following the termination of their employment with All Risks. (BA ¶4.) The NSA signed by Feldhaus contains an identical covenant, except that its duration is one year, rather than two years, following the termination of his employment. (NSA ¶4.)

The Agreements define "Known Insureds" as follows:

"Known Insureds" shall include those individuals or entities whose insurance coverage has been placed through [All Risks] during the two (2) years preceding the termination of Employee's employment and (i) with whom Employee handled insurance, reinsurance or bonds or otherwise participated in the activities related to the placement or servicing of insurance needs; (ii) whose risk management characteristics became known to Employee and with whom Employee gained Confidential Information, in the course of the performance of Employee's employment duties for Employer.

(BA ¶4A(1); NSA ¶4A(l)).  They define "Known Retail Agents or Retail Agencies" as the following:

> "Known Retail Agents or Retail Agencies" shall include those individuals and/or entities through which Employee has placed insurance coverage or provided services related to insurance coverage during the two (2) years preceding the termination of Employee's employment.

(BA ¶4A(2); NSA ¶4A(2)).  Finally, "Prohibited Activities" are defined as follows:

> "Prohibited Activities" shall mean (i) services in the fields of wholesale brokerage insurance, specialty lines or surplus lines insurance; or (ii) services performed by [All Risks] on the date of termination of Employee's employment.

The Agreements also require the individual defendants to safeguard All Risks' confidential business information (BA ¶3; NSA ¶3), and prohibit the individual defendants from soliciting or hiring employees of All Risks for a period of two years after their termination of employment. (BA ¶5; NSA ¶5.)

Duran's agreement also includes a provision that permits him, upon the termination of his employment at All Risks, to designate up to six Known Retail Agents or Known Retail Agencies that would be exempt from the nonsolicitation covenant in his BA.  (Duran BA ¶4B(2).)

The Agreements each contain a choice-of-law clause designating Maryland law as the governing law, "without regard to principles of conflicts of law of this or any other jurisdiction." (BA ¶13; NSA ¶13.)  They also each contain forum-selection clauses providing that disputes arising out of the contract "shall be resolved by and under the exclusive jurisdiction of the Courts of the State of Maryland."  (*Id.*)

On Friday, April 23, 2010, the individual defendants each resigned from All Risks, and the following Monday, April 26, 2010, each started working for Crump.  (Compl. ¶¶27-28.)  The individual defendants had each been recruited by a headhunter to work at Crump.  (Duran Aff. ¶4.)  Duran also was recruited by Terry Sherwin, the office manager of Crump's Atlanta office.

(*Id*.)  Upon his resignation, in accordance with his BA, Duran submitted a letter to his manager, Dave Rucker, a Senior VP in All Risks' Fort Lauderdale, Florida office, in which he designated six Known Retail Agents/Agencies as those exempt from the non-solicitation covenant in his BA.  (*Id*. ¶2.)

The complaint alleges that after joining Crump, the individual defendants solicited Known Insureds of All Risks in violation of the non-solicitation covenants.  (Compl. ¶¶32-33.)  Specifically, it alleges that three Known Insureds—Baptist Health Systems, Inc., Indian River Medical Center and Boca Raton Community Hospital—changed their broker of record from All Risks to Crump in the first few days of the individual defendants' employment with Crump.  (*Id*. ¶ 34.)  The insureds changed their broker of record when their respective agencies signed Broker of Record Letters indicating the change.  (*Id*.)  The two agencies that wrote those three letters, Harden and Seitlin, were among the six Known Retail Agents/Agencies that Duran expressly exempted from his non-solicitation covenant.  Each of those Named Insureds was referred to Crump through those Agencies.  (Duran Aff. ¶5.)

## PROCEDURAL BACKGROUND

On April 23, 2010, the individual defendants' last day of employment with All Risks, Crump and Duran filed a petition for declaratory judgment against All Risks in the Superior Court of Fulton County, Georgia (the "Duran action").  Four days later, on April 27, 2010, Crump, Feldhaus and Yoss filed a second petition for declaratory judgment against All Risks in the same court (the "Feldhaus/Yoss action").  In these lawsuits (collectively, "the Georgia actions"), Crump, Duran, Feldhaus and Yoss sought declarations that the restrictive covenants in the respective Agreements are not enforceable under Georgia law because they (1) are overly broad in the type of activities prohibited, (2) are overly broad with respect to the persons and/or

4

entities with whom the employees are purportedly prohibited from soliciting or accepting business, (3) lack a territorial scope, (4) are vague and confusing, and (5) are temporally ambiguous because of a tolling provision in the covenant, and thus, they are void as against public policy. (Ex. 2, ¶¶13, 21; Ex. 3, ¶¶17, 25.)

On May 21 and May 25, 2010 respectively, All Risks removed the Georgia actions to the U.S. District Court for the Northern District of Georgia. *See Crump Insurance Services, Inc. v. All Risks, Ltd.*, Case No. 1:10-CV-1555-RWS (N.D. Ga.) (Duran action); *Crump Insurance Services, Inc. v. All Risks, Ltd.*, Case No. 1:10-cv-01589-JOF (N.D. Ga.) (Feldhaus/Yoss action). On May 28, 2010, All Risks moved to dismiss or in the alternative to stay both cases, on the ground that the agreements contain forum selection clauses that require the disputes to be litigated in a Maryland court. In addition, the plaintiffs in the Georgia actions (the defendants here) moved to remand.

On May 13, 2010, twenty days after Crump and Duran filed the first Georgia action, All Risks filed the instant action in the Circuit Court of Maryland for Baltimore County against Crump and all of the Individual Defendants. The four counts in the complaint are:

Count I: Preliminary and Permanent Injunctive Relief (all Defendants)
Count II: Breach of Contract - Restrictive Covenants (Individual Defendants)
Count III: Tortious Interference with Existing and Prospective Contractual Business Relationships (all Defendants)
Count IV: Tortious Interference with Contractual Relationship with Individual Defendants (Crump)

On June 11, 2010, the defendants removed the action to this court.

On July 20, 2010, the defendants in this action jointly filed a motion to dismiss or, in the alternative, to transfer or stay. On November 19, 2010 and January 18, 2011, the Georgia federal court remanded the Feldhaus/Yoss action and the Duran action, respectively, to the Superior Court of Fulton County, Georgia, concluding that the defendants had not shown with sufficient

certainty that the amount in controversy met the requirements for the court to exercise diversity jurisdiction. On March 24, 2011, the Superior Court of Fulton County, Georgia dismissed the Feldhaus/Yoss action, concluding that the forum selection clause in the employees' respective employment agreements was enforceable under Georgia law, and therefore the action must be brought in Maryland. In dismissing the action, the court rejected Crump's argument that, because it was not a party to the employment agreements and the forum selection clauses therein, its declaratory judgment action should not be dismissed. All Risks "anticipate[s] a similar ruling by the Georgia state court in the Duran Action." (Letter from George Brown, March 24, 2011, ECF No. 23.)

Thus as of March 24, 2011, litigation was pending in two forums: this suit in the District of Maryland, alleging breach of contract and tort claims, and the Duran declaratory judgment action in the Superior Court of Fulton County, Georgia.

## ANALYSIS

**I.     Transfer**

The defendants have moved to transfer this action to the U.S. District Court for the Northern District of Georgia. When they originally filed their motion, the Georgia declaratory judgment actions were pending before two judges of that court. Since then, first one of those actions, and then the other, were remanded to the Superior Court of Fulton County, Georgia for failure to satisfy the amount-in-controversy requirement for diversity jurisdiction.[1] The Georgia state court then dismissed one of the actions, and, according to All Risks, will likely dismiss the

---

[1] Before those cases were remanded to the Georgia state court, the defendants had argued that this court should dismiss or stay the action under the "first-to-file rule." *See Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974) ("[O]ther factors with respect to change of venue being equal, the case ought to be tried in the district court in which it was first filed."); *Ulmet v. United States*, 888 F.2d 1028, 1031 (4th Cir. 1989) (explaining that the rule is based on principles of "comity and the orderly administration of justice"). Once those actions were no longer pending in the federal court, the rule became inapplicable, because the rule only applies when two substantially identical suits are filed in different federal courts.

6

other state court action soon as well for the same reason. The question has thus become the following: Should this action be transferred to the Northern District of Georgia despite the fact that (1) neither declaratory judgment action remains in the Georgia federal court, and (2) the Georgia state court has dismissed one of the declaratory judgment actions for failure to comply with the forum selection clauses?

Under 28 U.S.C. § 1404(a), a district court may transfer a case, in its discretion, to a district in which the case might otherwise have been brought, "[f]or the convenience of the parties and witnesses, in the interest of justice." Section 1404(a) requires an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). To prevail on a motion to transfer venue under § 1404, a "defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009) (citation omitted). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a). *Id.*

The court will assume without deciding that the Northern District of Georgia would be the more convenient venue for parties and witnesses. Transfer is not warranted, however, because transfer would not be in the interest of justice. The "interest of justice" analysis "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005). These factors include "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might need to be viewed, the possibility of an unfair trial, the ability to join other parties, and the possibility of harassment."

*Acterna LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 940 (E.D. Va. 2001). Also relevant is the local interest in having localized controversies decided at home. *King v. Navistar Int'l Trans. Corp.*, 709 F. Supp. 261, 262 (D.D.C. 1989); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (noting the relevance of this "public factor" in the *forum non conveniens* context).

Here, in light of the dismissal of the Feldhaus/Yoss action, transfer would not be in the interest of justice. A Georgia court has already decided that the case should be litigated in Maryland, despite the fact that the case is largely a Georgia dispute, involving Georgia parties, witnesses, employment, and documents. Although that ruling does not preclude transfer, it is a significant factor weighing against transfer. If this action were transferred to Georgia, the federal court there would find itself adjudicating a case that a Georgia state court had recently decided should be litigated in Maryland. Moreover, transferring the case to Georgia would not preserve judicial resources, because the Duran declaratory judgment action is not pending in the Georgia federal court, and so could not be consolidated with this action.

Nonetheless, the defendants argue that this court should transfer the case because, although the employment agreements contain choice-of-law clauses designating Maryland law as governing the contracts, the clauses are not enforceable; in the absence of those clauses, they argue, Georgia law will apply, and therefore a Georgia court should hear the case. This argument does not tip the scale in favor of transfer, however, because even if the choice-of-law clauses were unenforceable, and even if under Maryland's choice-of-law rules Georgia law would govern the enforceability of the restrictive covenants, this court could apply Georgia law to the dispute. Although, all else equal, a federal court sitting in Georgia may be best situated to apply Georgia law, *see Dicken v. United States*, 862 F. Supp. 91, 93-94 (D. Md. 1994) ("While federal judges in Kansas are not necessarily better qualified than this Court to apply Kansas law,

8

they are undoubtedly more familiar with it, a further consideration justifying transfer."), here all else is not equal, given the recent dismissal of the Feldhaus/Yoss declaratory judgment action.[2]

For these reasons, even though most witnesses and evidence would be in Georgia, the defendants have not shown that transferring the action to the Northern District of Georgia would be in the interest of justice. Therefore, the defendants' motion to transfer will be denied.

**II. Abstention**

After the Georgia federal court remanded the declaratory judgment actions, the defendants here argued that this court should abstain under the *Colorado River* doctrine, pending the resolution of those actions. *Colorado River* governs the determination of when a federal court should abstain where there is litigation pending in state court, and where considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" counsel in favor of permitting the controversy to be resolved in state courts rather than federal courts. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citation omitted). "It is well-settled that 'our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other.'" *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 205 (4th Cir. 2006). "Indeed, despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the state system is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 205-06 (alterations omitted). "Moreover, the Supreme Court has cautioned that federal courts are

---

[2] In determining that transfer would be inappropriate, the court need not decide whether the forum selection clauses in the individual defendants' employment agreements are enforceable, because transfer would not be warranted irrespective of the enforceability of the forum selection clauses.

bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Id.* at 206 (quoting *Colorado River*, 424 U.S. at 817). Accordingly, a federal court may abstain in deference to concurrent state-court proceedings only if they are parallel, and even then only in "exceptional circumstances." *Id.* at 207-08.

Abstention would be inappropriate because the actions currently pending—this action and the Duran declaratory judgment action—are not parallel. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 742 (4th Cir. 2002). After the Georgia court dismissed the Feldhaus/Yoss action, only one of the individual defendants remained a party to the remaining declaratory judgment action in Georgia. The cases thus do not involve "substantially the same parties." Accordingly, the court need not reach the question of whether "exceptional circumstances" exist, and will deny the defendants' motion to abstain under *Colorado River*.

### III.  The forum selection clauses

As noted above, the court need not decide at this stage whether the forum selection clauses in the individual defendants' employment agreements are enforceable because, irrespective of their enforceability, neither transfer nor abstention would be warranted. The court notes, however, that the clauses require that all disputes related to the agreements "be resolved by and under the exclusive jurisdiction of the Courts of the State of Maryland." (BA ¶13; NSA ¶13.) The Fourth Circuit has recently held that "forum selection clauses that use the term 'of [a state]' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state." *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010). In such cases, a forum selection clause serves to "exclude[] jurisdiction in the federal courts" if the clause is "unambiguously expressed in terms of sovereignty," *id*., and is

10

enforceable.  *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009) ("Having interpreted the AOL forum selection clause to designate Virginia state courts, we turn to the enforceability of the clause."); *see also Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650-51 (4th Cir. 2010) (holding that, in a diversity case, the enforceability of a forum selection clause is a question of federal law, and setting forth the federal standard for whether a mandatory forum-selection clause is enforceable).

The defendants have not disputed the existence of federal jurisdiction over this action, and have not moved to remand.  This might not resolve the issue, however, because although *FindWhere Holdings* held that a forum selection clause mandating that disputes be litigated in a state court "excludes jurisdiction in the federal courts," 626 F.3d at 755, the Fourth Circuit did not address whether such a clause ousts the federal court of subject matter jurisdiction, or whether it implicates only a procedural matter such as venue, which presumably can be waived.  Indeed, this issue was not before the court in *FindWhere Holdings*, because there the defendants had filed a timely motion to remand.  *Id.* at 753.  In the absence of briefing from the parties, however, the court will not decide the issue, because in any event the case will not be transferred, stayed or dismissed.

## CONCLUSION

For the foregoing reasons, the court will deny the defendants' motion to dismiss or, in the alternative, to transfer or stay.  A separate Order follows.


March 31, 2011                                              /s/
Date                                                        Catherine C. Blake
                                                            United States District Judge